Thank you. You may be seated. Good morning. It's a pleasure to be here in Missoula, Montana, for our oral argument calendar. I am joined today by Chief Judge Emeritus, Sid Thomas, and also by one of our members of the Court, Judge Anthony Johnstone. My name is Mary Murguia. I'm Chief Judge of the Ninth Circuit Court of Appeals, and I welcome you all here today. This is the time set for two cases that we're going to hear on for oral argument. The first one is United States of America v. Hugo Yanez. Counsel are ready to proceed. You may come forward. Good morning, Your Honors. My name is Benjamin Darrow, and I represent Hugo Yanez in this habeas petition appeal. I'd like to reserve four minutes. May it please the Court. I'm here as an appointed attorney as part of the CGA Act, and as you all know, that's entitled to defendants who, on habeas, have a certificate of appealability, which was granted in this case. The government, I think, wants to make that the issue. The government also didn't want to have a hearing in this case, and I think that the Court granting one, I think, shows that at least there's grounds for a discussion about the appeal. And in this case, Mr. Yanez had an enhancement to his sentence. It was a leader-organizer type enhancement, and it was based upon a relationship he had, a financial relationship, allegedly, he had with his live-in girlfriend. And that enhancement essentially made him not safety valve eligible. There was another enhancement that was alleged that was guns, and that one was not found as well. But once he became not safety valve eligible, he also moved up with the offense level because of the enhancement, and his sentence ended up being pretty stiff, 210 months. The district court denied the motion for habeas. In this case, it was interesting because the sentencing counsel changed, and that's when we're alleging essentially the error occurs at sentencing. The harm is a Strickland standard, but essentially the error was not being prepared to address the issue of Ms. Boehm, the girlfriend, and that error is not complete in the fact that she did, the counsel at sentencing did address that issue, but only very briefly in rebuttal. And I think that there was also an error about not understanding all the facts. This is about four trips to Montana with drugs, but actually there were seven taken by one of the co-conspirators. And that set of facts, which comes out in the evidence that we thought would be at a hearing at the district court level, is, I think, in the set of facts that was provided after the reply period by the government in their notice of additional evidence. And I thought that was interesting, too, just because if we're having an evidentiary issue, this Court might not be the precise place to do that. At the same time, we would rather win on that evidentiary issue. We don't fear that could you give us a sense of what additional evidence you would seek to uncover in a hearing? Yes. So, well, first of all, the Court used a standard of the case Maldonado and in doing so, I think there's many ways that could have been distinguished. Mr. Yonnas could have been distinguished. For example, it was not seven trips or not four trips, it was seven. So he wasn't even the supplier for some of those trips. But all of that was in the pre-sentence report, correct? Actually, the pre-sentence report only detailed four trips. Okay. But the Maldonado distinction is, I mean, that's something to be developed at argument, and you've had the opportunity to argue that distinction here. Do you really need a hearing for that? Am I? What was the last part there? Do you need an evidentiary hearing? I'm trying to get to it. You talk about this need for an evidentiary hearing. I'm not sure what other evidence. I don't even know if you need to necessarily get there. I feel like the district court did error about the facts. The things that I think needed to be presented were things like how many actual trips were taken by folks, what the financial relationship was. I think that the standard is that the enhancement needs to be approved by a preponderance of the evidence. So the counsel wasn't, I think, prepared to rebut the statements in the PSR, which I think essentially were misconstrued. And, I mean, part of the heart of this argument is that, and the district court addresses this with whether reasonable jurists could disagree about the financial relationship issue and how that, you know, it used to be that a husband or a man had the bank account, and in this case they had a shared bank account, but the interpretation of the shared bank account and her going to get the money, even though she actually ran all the finances, was that he was in charge. And that's the exact connection that occurred. And I think that evidence rebutting that would have to have been put on. I think we had evidence to rebut that. An evidentiary hearing at the other level, though, at the district court level, might also include whether sentencing counsel felt that they did an effective job. And I would argue that they would, by their appeal, they recognized that there was essentially a strong legal argument against the enhancement that they failed to make at sentence, and that it wasn't applied by the judge at sentencing. Let's make an argument at sentencing about the enhancement and raise the issue. Your argument seems to be she didn't push it hard enough, which I'm not sure equates to ineffective assistance of counsel. So I think that very specifically, had counsel found the case Maldonado, which was brought up by the sentencing judge Right. But you fault her for not citing that case, but it was the sentencing judge who brought that case up, not anybody else. So I don't think at that point the only way she could rebut Maldonado was to interrupt the sentencing judge, right? Maybe ask her what to do. Pretty tough time. Yeah. Yeah. I mean, that, or ask for a clarification about, because in Maldonado, the enhancement was an employee who was bringing the money back. And so I don't think that she was prepared to make that argument. I mean, hindsight's 20-20, but I don't think there was a strategic reason for her to miss Ms. Boehm as the person who might be in the supervised role, and that actually happened in the sentencing memorandum as well, where all of the discussion by counsel was about Ms. Bloom. Well, that's true, but the government did rely on that heavily. And it's hard to see a faulter for not rebutting the government's, trying to rebut the government's assertions. So, I mean, the whole question here is not whether the enhancement should be applied, but whether or not she was ineffective in her presentation of the objection. And I agree, and that's what we're asking for either a hearing to determine or for this When do we get to the enhancement issue? And what we're really asking for is for another opportunity to sentence Mr. Yanez with a fully informed judge who can see all the facts, including facts like the ones that have been submitted to this Court. Mr. Darrow, could you speak just a bit, before your opening time is up, on the certificate of appealability? Why, what's your response to the government's concern that it's incomplete? I don't think the district court judge erred in that regard, and I'm fearful that if the government were to win on this argument, they will have won twice procedurally in this case, because they also won on the argument that an appeal wasn't appropriate because she waived her appeal. And so I think the district court was correct. If one, I think one prong of reasonable jurists could disagree about the other, and that's an opportunity for an appellate court to be those reasonable jurists, to see if you disagree. So I think that's why a certificate of appealability should be granted. Again, I think that that is an argument at the end, a little bit like my argument about a hearing. I don't know if it necessarily needs to go both directions. It's complicated. But it would be a denial not on the merits again for Mr. Yanez. So just before you close your first part here, after hearing the questions here, what's your best arguments to why the defense counsel at the time of sentencing was deficient? What do you want us to really focus on? The defense counsel was not prepared to address the Maldonado factors. Defense counsel failed to bring up that there were more trips. Defense counsel failed to articulate the problem with Ms. Bain being found to be in a supervised role because there was actually a totally different type of relationship, not a leader-organizer with his girlfriend. I think those are the key ones that should have been brought up. Thank you. Thank you. May it please the Court, Tim Tatarka of the District of the United States, District of Montana, on behalf of the United States. The District Court here correctly denied Mr. Yanez's extra collateral relief because the record clearly, conclusively shows that his claim that counsel was constitutionally deficient was without merit. Counsel clearly objected to the supervisor enhancement and clearly argued that Mr. Yanez was not a supervisor of either co-defendant, Bloom or Bain. That's at excerpts of the record, pages 20 and 21. All right. But, Mr. Tatarka, there's some disconnect between the amount of time counsel spent on Ms. Bloom and, although the objection was clear, there wasn't a lot of argument developed about Ms. Bain in the end. I disagree, Your Honor. I mean, obviously, the argument wasn't that long. It was three months from start to finish. But counsel did expressly make the argument that appellate counsel makes now, that Bain was just there to supervise her — you know, she was there to look after her money. That's at excerpts of the record, page 21. That is exactly the argument that appellant made in his opening brief. And the other argument that he contends that he — she should have made was that Bain — I lost my train of thought — that — oh, one was that Bain had — didn't have her counsel or was looking after her money. The other argument with respect to Maldonado was that — the distinction that he wants to make with Maldonado was no money came back to Yanez. That is an argument that she made. Well, this is about whether or not the defendant here should have gotten a sentencing enhancement for leadership or role in the fence as a leader of this conspiracy. That's what we're — the main issue is here, right? And whether or not defense counsel was deficient at sentencing for not arguing that point harder, I think, as Judge Thomas said. And there are some issues that have come up, and particularly about Ms. Bain, who was, I think, the girlfriend of the appellant, and whether or not — was he really directing her to do anything, or was she doing it on her own? And so can you answer this? Because you have to have certain requirements to get the enhancement for leadership and role in the offense. Absolutely. And I do want to clarify that this is — this is a two-level enhancement for being a manager supervisor, not a four-level enhancement for leader organizer. And this requires a supervision of one — one co-conspirator, and it can be in one aspect of the crime. And I would recommend the Court's attention to Beltran on that point. But get — But if it was Bain, which is what we're focused on, where is the evidence? It's at PSR paragraph 32. Clearly, Bain says that Mr. Yanez sent her to look after the money. And — And what's your best case to support that? Beltran. The Beltran case is very similar in facts. In that case, the — the court affirmed based on the — the — again, a single case where the defendant there sent people to go pick up methamphetamine. Again, that is the — in this case, there was clearly enough to support the — the judge's determination that the enhancement applied. I do want to address specifically the issue of whether or not counsel should have brought up — there was more that could have been made about what counsel — about the girlfriend, the fact that she was his girlfriend. I would note, as the district court noted below, that argument, which it was clear that the district court did know that it was a girl — that they were in a boyfriend-girlfriend relationship. Ms. Bain and — Ms. Bain and — and Yanez. The court says that at excerpts of the record 18 and 19. But that would have opened up — I would recommend the Court's attention to PSR paragraph 91 and 92, which, as the district court noted there, Ms. Bain had, in fact, told the PSR writer that Mr. Yanez was controlling in that relationship, and she had, in fact, attempted to escape a number of times that he tracked her down. Those are all facts that counsel had very good reason not to want to bring up and was not unreasonable for not raising at the sentencing argument. Well, you argued today that the record is clear to support the conviction here and to support an affirmance here, but yet you ask us to grant your motion to supplement the on appeal. So if the record is so clear, why do you want to supplement the record on appeal? So the — the court is — is perfectly free to — to deny that as moot because the record is clear, and that is what we think — we think the — the Rule 4 record is clear. The court can deny our motion as moot. However, Mr. Yanez was, in fact, asking for relief from the — the 2255, not just a — asking this Court to decide the issue of the 2255, not just the evidentiary hearing. So we felt the Court needed to hear the full — know the full story, which was that Mr. Yanez had, in fact, admitted both sending Bain and — and that he was involved in — in four trips. But the government could have put that on at the sentencing hearing, correct? We didn't — no, Your Honor. I mean, we didn't need to. You know you didn't need to. Well, there was no — there was — so it was in the PSR. Right. The PSR, paragraphs 33 and 34, do say that — that Yanez was responsible for — for the four trips. Because there was no objection, there was no need to put on — I realize that. I'm just saying it's a little unusual when you didn't put on the — the supplement, the record, so we're considering new evidence on appeal. And I agree, Your Honor. I agree that that would be — that would be a rare case. And again, we don't think it's necessary because we think the Rule 4 record is clear. However, I do think if the Court found — if the Court found that the Rule 4 record wasn't sufficient, this is the rare case where the mere — the mere existence of that recording makes clear that — because no reasonable jurist could find that counsel was deficient for not raising the — an objection that would have led to the admission of that — that would have led to the admission of that charge. So I agree that that would be the rare case. And I don't think it's necessary here because the Rule 4 record is clear, but we did want to present that so the Court had the full view. And I do think this would be the rare case where it would — that evidence shows that any remand would be futile. Mr. Sotarka, what are we supposed to make of the Certificate of Appealability and the defects you point out? Wouldn't that require us to — to send it back and maybe put the government in a position where it's filing a response? No. No, Your Honor. And I would recommend this Court's attention to the — the Bommer case, which was in front of this — this same — oh, no, I guess you're right, that one. They did send it back. In this case, the Rule 4 — the Court can — can find that the Rule 4 — the Rule 4 record was sufficient, the COA was improvidently granted, and then can consider the opening argument or the — the briefing here as a request for Certificate of Appealability and deny that. Did you — did you cross-appeal? I'm trying to figure out how this issue is before us on Certificate of Appealability. We did not cross-appeal. We — we just asked the Court — we moved to dismiss, essentially. Yeah. You know, why is this the exceptional case? That's our standard for vacating a COA issued by a district judge. Because the Rule 4 record is clear. So there is — inherently, there's tension between granting a Rule — granting a — or denying a motion on — on Rule 4 but granting a COA. But the standards are different. I would — I would — You know, you relied on Hendricks, but that's a pre-AEDPA case involving a Certificate of Probable Cause and not a COA. And our subsequent cases on vacating a COA set a pretty high standard for doing that. And also, as a practical matter, then we just take it up anew, which is a pretty good thing.  But I don't think there's a chance that it's going to be granted. I agree. And I do — but I — but I do think there — there isn't a chance here. He did the Rule 4 analysis correct. And so it would — I would argue that it's judicially inefficient — would be judicially inefficient to send it back down to — to remand. We were — we would be perfectly comfortable with a — with the Court just affirming the Rule 4 on the merits. The reason we brought up the argument of the COA is because we acknowledge that there is some tension between denying a motion on — on Rule 4 and granting a Certificate of Appealability. In this case, we think the Rule 4 analysis was correct. It can be affirmed on that. It's really not that uncommon for this to occur, particularly, for example, when somebody's arguing about three strikes, and the — and the — there's some difference on that. And it's knocked out of the screening. And then the COA is granted. But I would — I would argue that that's different because that's a clear legal issue. So the same thing might be true, say, in a — in a crime of violence issue, where the Court might say, it's clear that if manslaughter is not a crime of violence, then the enhancement didn't apply. But the Court may — may disagree about — about legally whether or not manslaughter is a — a crime of violence. But this is different than that because the question isn't one of a — of sort of like impending legal issues. The — the facts in the record here clearly show that the Rule 4 was — denial was — was properly granted. Again, we're perfectly happy — we'll take any win we can get. Yeah, of course. We're perfectly happy with just — just an affirmance. But we just wanted to cover our basis. Unless there's no — any other questions. Thank you. Thank you. You have some rebuttal time. Just briefly in rebuttal, I think that some of the issues that were raised by the government show the arguments that needed to be made at sentencing and, therefore, the ineffectiveness of sentencing counsel. Specifically, there — there was a failure to object at all to the number of trips described. And the government was well aware of the number of trips that actually occurred because Mr. Yanez made the statement that was introduced as supplementary evidence to this Court before any sentencing, when he was arrested. And that was when he had taken at least seven trips. Mr. Darrow, isn't one trip enough, if there's supervision? But none of them were supervised by him. And so she was — Ms. Bloom was already going. And I agree with you that if — if he sent someone even one time in a supervisory way, like you go and you come back, delivering people products, for example, that he knows at the end, like in Maldonado, or as an employee, that would be sufficient. But what about paragraph 32 on the PSR, the statement your — your friend across the aisle is pointing us to, where she says, he sent me — Ms. Bain says, she sent me because he wanted me to make sure I got the money. It seems like a supervisory role in this conspiracy. Well, and that is the statement that the government relies on and that needed to be rebutted. Specifically, though — Well, did you object to that in the pre-sentence report? Did the counsel below object to that in the pre-sentence report? They did not. They didn't — So then the law is, if I understand it correctly, that if you fail to object, then that's the facts that the district court can consider. And it looks like the district court did consider that fact. That was the — the key fact. And I guess what my point is, is that had counsel presented, for example, the other information, then they would have been able to overcome that fact. And the other information, I think, is that there wasn't a supervisory relationship. There was a boyfriend-girlfriend relationship where they shared money. And she was actually the one who was in charge of managing the accounts, which is why she went, to make sure that the money returned. And I think she uses the phrase, her money, as well. Would you like to make a concluding statement? Well, just briefly, regarding the certificate of appealability, I think that the district court judge got it right. And in this case, the development of the record on appeal is actually, I think, very interesting. I did not reply to this, partly because I felt like my argument was good enough. And then, after that, the government filed a supplemental authority. And additionally, it makes me regret not replying because of the certificate of appeal issue. So just in that regard, I think winning on a technicality, if the government wants to win, would be very unfair. Winning because the Court determines that there's a question about ineffective assistance of counsel, and that needs to be resolved by the district court, would make a lot of sense from my perspective. Thank you. Thank you. Mr. Darrow and Mr. Tatarka, I appreciate your oral argument presentations today. I know normally this can be sort of challenging to make our argument presentations, but when you have an audience the size of this one, it sometimes is even more challenging. But thank you very much. The case of United States of America v. Hugo Yanez is submitted.
judges: MURGUIA, THOMAS, JOHNSTONE